### LYDIA H. JENNY v. JOSIAH H. JENNY.

#### [IN CHANCERY.]

#### *Right to Dower.*

One cannot hold property which he receives as a mere gratuity, or as heir, if the property was so conveyed to him to defeat the wife of the deceased, to her right to dower, but he will be held liable in chancery to account for the property so received, and the widow will be entitled to one-third part of such property.

APPEAL from the court of chancery. The orator alledged in her bill, that on the 20th day of June, A. D. 1825, she intermarried with Ephraim Jenny, and lived with him till 1834, when he deserted her, he having a large property and children by a former wife; that plaintiff had $300, and that said Ephraim conveyed all his property to Josiah H. Jenny, the defendant, with a view to defeat the plaintiff of her marital rights, and that since, Josiah H. has conveyed away all the property, and converted the same into money, and that he gave no consideration therefor, but in trust for said Ephraim, and to defeat said orator of her dower in her husband's estate.

The defendant in his answer admits, that the marriage was in 1828, or 1829, and that plaintiff lived with said Ephraim until 1834, or 1835, and that they then separated, and soon after came together and lived together a year, and then said Ephraim hired plaintiff boarded at different places until his death; that orator only brought $50 of household furniture to said Ephraim, and that his property was not above $2000; denies all fraud in purchasing the property. Ephraim Jenny's first wife was the daughter of one Heald, and he died leaving his widow living, and all his property to said Ephraim on condition of maintaining the widow Heald; that she became dissatisfied, and the property was conveyed to Gowing and Dart to maintain the widow, and they continued to do it until 1835, and then gave it up; that defendant undertook to maintain the widow Heald, his grandmother, on condition of receiving the Heald estate and other property of said Ephraim, and also to maintain and support his sister, and that he did maintain them during their lives. That the widow Heald died in 1838, that defendant did not suppose this conveyance was to defeat the rights of plaintiff, and now insists he paid a full consideration and took it in all good faith. Admits that he has conveyed the land and received for it some $1300. That said Ephraim had a poor son, for whom he paid money and took a mortgage of his farm, and the defendant has since made further advances, and took a deed of farm for security; some $375, due in 1842. $260 of it, the property of Ephraim Jenny and accounted for to him and plaintiff, had no intention of defrauding the plaintiff, and is ready to account for the balance due to administrator of said Ephraim. Admits the purchase of said Ephraim at different times of personal property, but in every instance paid him therefor the full value of the same, and with no suspicion, that the conveyance was made to defraud the plaintiff, and does not believe such to be the fact. Admits that said Ephraim deceased in January, 1844, but denies his insolvency. Admits that he has done nothing to maintain the orator since the decease of the said Ephraim.

The orator's testimony tended to prove, that said Ephraim at the time of his death had no property except a watch; that defendant sold the Marsh mortgage to H. H. Henry, and that he also sold two cattle of value $18,50 each, which said Ephraim

raised. That this suit is brought for the benefit of the town of Chester and the plaintiff. That defendant after purchase of farm worked at his trade, as a wheelwright, and said Ephraim carried on the farm, that defendant took no more charge after the sale of the farm than before; that he paid nothing for the farm, except maintaining Mrs. Heald and his sister, that plaintiff might have had $300, if she would have signed an acquittance. That defendant paid merchant's account against said Ephraim in 1839; that said Ephraim had large stock in 1838, worth some $400; that said Ephraim agreed to give plaintiff $800, if she would give him a bill, and that said Ephraim said that he wanted a settlement with plaintiff, and made offers for that purpose, and said he should not live with her more, and should give no reason, &c. The defendants offered no testimony.

BY THE COURT. This case does not seem to have been referred to a master in the court of chancery, consequently we have no statement of the account between the parties, by which to determine how large a portion of the property, which seems to have come to defendant's hands and which he claims to retain, he has returned an equivalent for, and how large a portion of it, he must have received as a mere gratuity or as heir. We think it reasonable that the defendant should render an account of all the property which came to his hands once belonging to his father.

For all which he has paid a full and fair equivalent he will not be made liable. For all which he still retains, as a gift, or as heir, or which he has passed over to the other children as heirs, (all which we think is shown to have been done to defeat the plaintiff's right to dower,) for this, then, we think the plaintiff is entitled to a decree for one-third part.

The decree of the chancellor is reversed and the case remanded to the court of chancery to take an account and pass a decree for the orator for one-third of whatever sum the defendant shall appear to be liable for, the account to be as follows. The defendant to be charged with whatever sums appear either by the answer or testimony, to have come to his hands of the property of his father, either at the time, or before, and to be allowed to discharge himself by his own oath and other evidence, which shall show to the satisfaction of the master he paid a full and fair con-

sideration for, or which he had *bona fide* passed into the hands of his father before his decease, but not by passing the same into the hands of the other members of the family, as a portion of his father's estate.