## Mary E. Cranson, complainant and appellee, *vs.* Peter Cranson and others, defendants and appellants.

A deed given by a husband to his sons shortly before marriage, without consideration, and kept secret until after the marriage, is fraudulent as to the wife, and does not bar her right of dower.

The wife cannot claim her distributive share of her deceased husband's personal property, which he sold by bill of sale, and delivered shortly before his death; the delivery, whether the transaction was a gift, or sale for consideration, consummating the sale and rendering it valid.

The wife is not entitled to compensation for personal property which she brought to her husband upon marriage, unless there was an ante-nuptial contract respecting it, and securing it to her as her separate property after marriage.

Appeal from Jackson Circuit Court, in Chancery.

The bill in this cause was filed by the widow of one Thomas Cranson, deceased, against his heirs-at-law, to set aside a deed of certain lands, claimed to have been made and delivered in fraud of complainant's marital rights, and for dower, etc., in said lands, and also to set aside a bill of sale of personal property, made by said Thomas Cranson to his sons just before his death, and for her distributive share thereof; and also, for the value of personal property brought by her to said Cranson, upon their marriage, and alleged to have been converted by him.

The bill charged, and the answer admitted the intermarriage of the complainant with Thomas Cranson on the 20th of August, 1849, and that she lived and cohabited with him until his death on the 15th of January, 1853, and that he died intestate. The bill further charged, that the deceased did, on the 6th of August, 1849, in contemplation of their marriage, execute to certain of the defendants, a deed of the

lands in question, and acknowledged the same, but that the same was kept secret from the complainant, and was not delivered until long after the marriage, to wit: in September, 1852, in which month it was recorded, and the complainant claimed that such conveyance was in fraud of her rights, and that she was entitled to dower of such lands. The answer admitted the making of the deed, but denied that it was kept secret from complainant and not delivered, or that Thomas Cranson was seized during the marriage of the lands in question. But the answer alleged that the deed was executed and delivered in consideration of a life lease, executed by the grantees in said deed to the grantor of the same premises. Neither the bill or answer were under oath. The cause was brought to hearing upon pleadings and proofs, before the Circuit Court for the County of Jackson, in Chancery, and on the 29th day of November, 1854, that Court decreed as follows:

1. That complainant, as the wife of said Thomas Cranson, on his death was entitled to dower in the lands conveyed by him as aforesaid, and to the rents and profits of such dower and interest since.

2. That the bill of sale of personal property, made by the said Thomas Cranson, just before his death, was fraudulent as against complainant, and that it be set aside, and that the defendants pay the complainant $200 for her distributive share of such personal property; and that complainant be paid the value of the personal property brought by her to said Thomas Cranson upon her marriage, deducting the amount of such of her debts as had been paid by said Cranson, and the value of the property received by her since his decease; and that complainant was entitled to $250 worth of furniture, after deducting all taken away by her, whether her own or not.

From this decree the defendants appealed.

Mary E. Cranson, complainant and appellee, *vs.* Peter Cranson and others, defendants and appellants.

The facts proved before the hearing are sufficiently set forth, in the opinion of the Court.

*A. Blair*, for complainant and appellee.

I. The bill was well brought for dower. (*Swain* vs. *Perine*, 5 *J. C. R.*; *Ridgley* vs. *Brace*, 4 *Paige*, 98.) The deed being dated before marriage, and proved not to have been delivered at date, the *onus* is on the defendants to prove when it actually took effect. (*Costigan* vs. *Gould*, 5 *Denio*, 290.)

II. The bill of sale of the personal property was without consideration. It was a gift, and void as to the rights of the complainant under the statute. (*R. S.*, 284.) The widow's right, by the statute, is superior to that of the creditor. It cannot be cut off by will, except at her option. The pretended sale could not defeat a creditor, much less cut off the widow's allowance. The sale was not in fact a sale, but a testamentary act, and therefore in fraud of the statute. (*Tomkyns* vs. *Ladbroke*, 2 *Ves. Sen.*, 591; 7 *Vin. Ab.*, 202, *p.* 11; 1 *Bright's Husband and Wife*, 310.) The transaction cannot be sustained as a gift, *causa mortis*, because : 1. It was colorably a sale, and not a gift. 2. The property was not actually delivered, nor does it appear that the bill of sale was delivered in the lifetime of the vendor. 3. Such gift being revocable during the lifetime of the grantor, the title becomes absolute only at the death of the donor, and therefore the widow's right attaches at the same time. (*Harris* vs. *Clark*, 3 *Comst.*, 114.) 4. To support such gift, there must be the clearest evidence of enjoyment under it, and that it is not a testamentary act in fraud of the statute. (3 *Ves. Sen.*, 595.)

*Livermore & Wood*, for defendants and appellants.

I. The decree was erroneous as to the rents and profits of the one third portion of the lands, since the decease of Cranson, and was in disregard of Section 7, Revised Statutes, page 268, and Section 26, page 270.

II. The decree is erroneous as to the bill of sale. It was made to decedent's children, and if without actual consideration paid, the consideration of natural affection, it is well settled, is sufficient. (*Manly* vs. *Scott, Bridg.*, 269.) The transaction will stand as an immediate or irrevocable gift. It was meritorious, being to his children. (1 *Lead. Ca. in Eq.*, 569.)

III. The decree was erroneous in compelling defendants to pay $200, for the foregoing reasons, and for the further reason, that it appears she had some personal property from the defendants.

IV. The decree was erroneous in compelling the estate to pay the complainant the value of all the personal property received by decedent from her, deducting debts of her's paid by him, and property retained by her since his decease.

V. Also in decreeing that complainant was entitled to the value of household furniture, to the amount of $250, less the value of furniture received by her. There is no evidence that Cranson died possessed of any household furniture. He must have died possessed of this property. (*R. S.* 284, § 1.)

By the Court, MARTIN, J.

From the testimony it appears that prior to the 6th of August, 1848, Thomas Cranson was seized and possessed of the lands in question, and that on that day he executed the deed in question, at the house of one John Pratt, distant about five miles from his own residence. That at the time he executed the deed, he requested that the transaction should be kept secret, and said he wanted the witnesses to say

nothing about it, not even to their own families, nor to any of his children—assigning as a reason for such request that he was about getting married, and he thought it his duty to provide for his own children ; that the children of the woman he was going to marry had an estate they were getting something from, and that he would have one hundred acres left, which would be a good home for the widow, etc. He further said that he should keep the deed himself, and give it up to the boys when he got ready, and that in the meanwhile he did not wish that they ("the boys") should know anything about it. It further appears that he took the deed away with him.

Of the fact of delivering the deed before the marriage, we have no evidence. This was attempted to be established by the testimony of Lucy P. Wade, who swears that about a week before the marriage, Thomas Cranson requested Mrs. Franklin Cranson, who was the wife of one of the grantees, and who it appears, resided in his family, to get "them" papers and take care of them ; and that shortly afterwards she saw Mrs. Cranson return into the room with a paper, which, from the way it was folded up, she took to be the deed. She further states that "The old gentleman said he wished the boys to have shares of the property alike." But this testimony falls far short of establishing such fact. Indeed the natural conclusion, even if the paper folded so as to lead the witness to believe it was the deed, was such deed, is, that he still retained the paper, and requested Mrs. Cranson to keep it for him, and not for the grantees. Why he should at that time have made the gratuitous remark about his desire that "the boys" should share the property alike, when so small a portion of his property was covered by the deed, requires explanation before the rights of the complainant shall be determined by this portion of her testimony. But the answer of the defendants, coupled with the testimony offered to establish its truth, clearly negatives the presumption of

delivery before marriage, and almost necessarily leads us to the conclusion that the transaction was a deliberate fraud upon the complainant. It is true the answer is not put in under oath, yet we may fairly presume that if the transaction had been fair and honest, the answer would have so shown it, and been so framed as to have been sustained by the proof, if proof was to be had. Yet the answer alleges that the consideration of the deed was a life lease from the grantees to the grantor, executed at the same time with such deed. The testimony already referred to, of the facts attending the execution of the deed, flatly contradicts the answer in this respect, and repels any presumption of such a consideration. In addition to this, Lewis Wood, the surviving witness to the lease, testifies that he subscribed it in September, 1852, and his evidence satisfies us that it was then executed. The fact that the deed was recorded in the month of September, 1852, and shortly after the transaction testified to by Wood, is further corroboration of the charge of non-delivery until that time. The conclusion from all the testimony, taken in connection with the answer of the defendants, is, that the deed was never delivered by Thomas Cranson until in the month of September, 1852. Upon two grounds, then, it may be held that the deed does not debar the complainant of her dower in the lands in question : 1. Because the husband was seized of the lands during coverture ; and, 2. Because (had it been delivered at its date) its execution was fraudulent as to the complainant, being executed secretly for the purpose of cutting off her dower, which would be in fraud of law, and in fraud of her rights accrued directly on the marriage. (*See Swain* vs. *Perrine*, 5 *J. C. R.*, 482; *Littleton* vs. *Littleton*, 1 *Dev. & Bat.*, 327 ; *Killinger* vs. *Ridenhouser*, 6 *S. and R.*, 531.) The complainant further seeks to have the bill of sale of personal property made by her husband to the defendants, shortly before his death, set aside, and to have her distribu-

tive share of such property allowed to her. The claim is founded upon the statute (*R. S.*, *p.* 284, *Ch.* 70, § 1), which provides that when any person shall die *possessed* of any personal estate, etc., not lawfully disposed of by his last will, the same shall be applied and distributed as therein provided ; and gives to the widow her wearing apparel and ornaments, and those of her husband, the household furniture of the deceased, not exceeding in value $250, and other personal property to be selected by her, not exceeding in value $200. It is perfectly apparent, from the evidence in the case, that Thomas Cranson did not die possessed of the property mentioned in the bill of sale, as the same appears to have been delivered to the defendants, to whom the bill of sale run, and to have been distributed amongst them prior to his death. Such delivery, whether the transaction was a sale or gift, consummated it, and made it valid. (2 *Ves. Sen.*, 431; 12 *Ves.*, 39.) Nor was the transaction secret, so as to operate as a fraud upon the complainant, for the testimony establishes the fact that she was cognizant of it, and approved it. While Courts of Equity are, and very properly should be, anxious to protect the wife and the widow from fraud and undue advantage, and to secure to her the benefits of the laws wisely designed to save her from want, and will interfere to protect her from injustice and wrong, yet they can only do so upon a proper case, and the present is hardly one calling for such interference. The assent of the complainant to the transfer of this property, and her approval of the purposes of the transfer, repel any presumption of fraud in the transaction ; and in the absence of fraud, the deceased had a clear right to make such disposition of his property as he might think just and proper.

The complainant further seeks by this bill, to recover the value of certain personal property brought by her at the time of the marriage to the decedent, and used and consumed by

him and in the family.   The testimony shows that she brought into the family certain household stuff, furniture and other property, but there is no clear proof of its amount, kind, or value.   There is no evidence that this was claimed or regarded as separate property after their marriage, nor of any antenuptial contract respecting it.   It appears to have been placed in the household and upon the farm, and used like the other property of her husband; and it also appears that the decedent paid debts of hers, contracted before marriage, and that after his decease, she took away what remained of the property brought by her, and certain other property which had belonged to the deceased.   How much was used, how much was appropriated towards the payment of her debts, or how much was taken away by her, is not made known to us. There, then, is no equitable ground upon which to base a decree.

Nor has she any legal right to compensation for this property.   As there was no express contract, so we cannot hold that in virtue of the marital relation, any implied contract exists upon the part of the husband, binding his estate to the payment for such property as the wife may bring into his household, or may surrender to him, or which they may use and enjoy together.   The law has gone quite far enough towards the destruction of the marital unity, and has afforded opportunity enough for the overthrow of domestic happiness, and sufficient occasion for contentions and domestic strife, without this Court's engrafting upon it, constructions which will entail like mischiefs upon the survivor and the heirs of a decedent.

The decree must, therefore, be affirmed, in so far as it declares the complainant is entitled to dower in the lands in question, and in the directions given respecting the admeasurement thereof, and respecting the mesne profits; and

reversed in all other particulars, with costs to the complainant; and the case remitted.

Present, MARTIN, GREEN, WING, PRATT, COPELAND, BACON, and DOUGLASS, J. J.

DOUGLASS, J., dissented from so much of the opinion as holds that the complainant is not entitled to her distributive share of the personal property of the decedent. In the other conclusions concurred.

JOHNSON, J., having decided the cause below, did not participate.