JENNIE YOUNGS, Respondent, *v.* HANNAH M. CARTER AND NETTA YOUNGS, Impleaded. with DANIEL S. YOUNGS, Appellants.

*Equitable jurisdiction of Supreme Court — extent of — Const., art. 6, sec. 3 — Fraud — conveyance by one, with intent to defraud intended wife of dower — remedy of wife.*

The equitable jurisdiction of the Supreme Court includes all cases which may be properly comprehended within established and existing equitable principles. It is not necessary to establish the existence of some definite precedent for the action which is sought to be maintained.

One John Youngs, a widower, was engaged to be married to the plaintiff on the 27th of August, 1872, but in consequence of his sickness on that day the marriage was postponed to the third of September. On the thirtieth of August, he, without the knowledge of the plaintiff, conveyed real estate, of the value of $150,000, comprising nearly the whole of his estate, to two daughters by a former marriage, and took back from them a lease of the same for his life.

After the marriage the plaintiff, upon learning that said conveyance had been made, brought this action to set the same aside. *Held*, that the conveyance was a fraud upon the rights of the wife; that the same should be adjudged void as to her inchoate right of dower, and that she should be adjudged entitled to a dower right in the land so conveyed.

*Held*, further, that she might maintain such action during the life of the husband.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action at Special Term.

*George W. Lord*, for the appellants. A court of equity cannot, by its decrees, supply "omissions" or "defects" in positive legislation, and do what the law-making power has left undone. (1 Story's Eq. Jur., §§ 14, 15, 16, 18, 19, 20 [7th ed.]; 1 Fonb. Eq. B., 1, § 3, note *h ; Burgess* v. *Wheate*, 1 W. Black., 123 ; *Bond* v. *Hopkins*, S. & L., 428, 429 ; *Manning* v. *Manning*, 1 Johns. Ch., 530 ; 1 Mod., 307 ; *Cowper* v. *Cowper*, 2 P. Will., 753 ; Seld. Table Talk, tit. "Equity ;" 3 Black. Comm., 432 ; Mitf. Plead. Eq., 4, note *b*.) A court of equity cannot, even in a case of extreme hardship, make a new statute or enlarge one already in existence. (3 Black. Com., 431 ; 1 Dane Abr. Ch., 9, art. 3, § 3 ; Story's Eq. Jur., § 15 ; 6 Paige, 292 ; 4 Johns. Ch. R., 149 ; *Head* v. *Stamford*, 3 P. Wms., 412 ; *Mayor, etc.,* v. *Meserole*, 26 Wend., 139 ; *Supervisors, etc.,* v. *Durant*, id., 65.) The settlement of a portion or of all a man's

estate upon his children in contemplation of a second marriage is not prohibited by our laws, nor does it operate as a fraud upon the marital rights of the wife. (1 Hill. on R. E. [4th ed.], 168, chap. 10, § 6; Park on Dower, 231, 236, 375, 382; Ath. on Mar. Set., 323, 329; Rop. on Hus. and Wife, 354 [note], 356; 1 Wash. on Real Prop., 161, § 13; Hov. on Frauds [vol. 2], 83; *Swamorck* v. *Lynford*, Co. Litt., 208; *Bottomly* v. *Fairfax*, Prec. Ch., 336; *Hill* v. *Adams*, 2 Atk., 20; *Banks* v. *Sutton*, 2 P. Wms., 700; Show Parl. Cases, 71; Draper's Case, 2 Freem., 69; Ambl., 6; 14 Ves., 290; *Stewart* v. *Stewart*, 5 Conn., 317; *McIntosh* v. *Ladd*, 1 Humph. [Tenn.], 459; *Richards* v. *Richards*, 11 id., 429; *Blood* v. *Blood*, 23 Pick., 80; *Thomas* v. *Davis*, 6 Ala., 113; *Cameron* v. *Cameron*, 10 S. & M. [Miss.], 394; *Whithead* v. *Mallory*, 4 Cush., 138; *Miller* v. *Wilson*, 15 Ohio, 116; *Link* v. *Edmonstone*, 19 Miss., 457; *Randall* v. *Randall*, 3 Mass., 378; *Baker* v. *Chase*, 6 Hill, 482; *Holmes* v. *Holmes*, 3 Paige, 363.) Fraud in such cases cannot be presumed. It must be proved. A settlement made in consideration of blood is never presumed to be fraudulent as against creditors or others. (*Bucklin* v. *Bucklin*, 1 Keyes, 141; *Frazer* v. *Wetmire*, 1 Barb. Ch., 220; *Swan* v. *Jackson*, 8 Cow., 406; *Loeschigk* v. *Addison*, 4 Abbt. [U. S.], 210; *Chatterton* v. *Gardner*, 11 Leigh, 281; *Freeghly* v. *Freeghly*, 7 Md., 538; *Reckets* v. *Reckets*, 4 Gill., 105; *Sangborn* v. *Lang*, 41 Md.; *Stewart* v. *Jackson*, 8 Cow., 496.) This action cannot be maintained during the lifetime of the husband. (*Moore* v. *The Mayor, etc.*, 8 N. Y., 110, 114.)

*William F. Shepard*, for the respondent. Any voluntary conveyance made by a man on the eve of marriage, and kept secret from the intended wife, is fraudulent and void as against her claim for dower. (*Swaine* v. *Perine*, 5 Johns, 482; *Smith* v. *Smith*, 2 Hal., 515; id., 6 N. J., 515; *Petty* v. *Petty*, 4 B. Mon. [Ky.], 215; *Thayer* v. *Thayer*, 14 Vt., 107; *Jenny* v. *Jenny*, 24 id., 324; *Cranson* v. *Cranson*, 4 Mich., 230; *London* v. *London*, 1 Humph., 1; *Brewer* v. *Connell*, 11 id., 500; Wash. on Real Prop. [3d ed., vol. 3], 298, 299.) That a voluntary conveyance or settlement made by an intended wife is a fraud upon the marital rights of the husband may be considered settled law.) *Pitt* v. *Hunt*, 1 Vern., 18; *Carlton* v. *Earl of Dorset*, 2 Vern., 17; *Howard* v. *Hooker*, 2 Ch. R., 82;

*Goddard* v. *Snow*, 1 Russ. R., 42; Clancy on Husb., etc., 614.) The plaintiff is entitled to maintain this action before the death of her husband. (4 Kent Com., 50 [marg.]; *Mills* v. *Van Voorhies*, 20 N. Y., 412, 420; *Matthews* v. *Duryee*, 3 Abb. Ct. Ap. Dec., 220, 221; *Simar* v. *Canaday*, 53 N. Y., 298, 314.)

DANIELS, J.:

The plaintiff instituted this action as the wife of the defendant, Daniel S. Youngs, to annul and set aside a deed by which he conveyed nearly all his real estate to his two daughters four days before his intermarriage with her. By the evidence given, the conclusions of fact determined by the learned judge who presided at the trial were sufficiently sustained to render it the duty of this court, upon the present appeal, to regard them as expressive of the truth of the controversy between the parties. They show that the husband had been previously married, and the defendants appealing were the daughters of that marriage. After the death of their mother, their father contracted a second marriage with the plaintiff, which was to have been solemnized on the 27th day of August, 1872, but by reason of his illness at that time, it was deferred to the third of the following month. Intermediate those days, and on the thirtieth of August, he conveyed the real estate in question, of the value of about $150,000 and comprising nearly all his property, to his two daughters, and they in turn executed and delivered to him a life lease of it. This was done without the knowledge of the plaintiff, who remained ignorant of what had transpired until after her marriage. When it was discovered by her, this action was commenced for the purpose already stated. And by the judgment recovered the conveyance was adjudged to be void as to the plaintiff's inchoate right of dower in the land on the ground of fraud, and she was adjudged to be entitled to such dower right in the property described in it.

It has been claimed, on behalf of the defendants appealing, that this court, as a court of equity, had no power to make the determination which resulted in the judgment, and several authorities were cited and relied upon in support of that proposition. But it will not become necessary to enter into any discussion of them for the purpose of making a proper disposition of this case; for even if it

should be conceded that the jurisdiction of the court cannot be enlarged by its own inherent authority, no practical difficulty could result from the concession; for it now extends to all cases of law and equity, by virtue of the provision of the Constitution defining its power. (Const. of 1846, art. 6, § 3.) The authority given, in terms is, "general jurisdiction in law and equity;" and that, of necessity, includes all cases which may be properly comprehended by established and existing equitable principles. The test of jurisdiction cannot be restricted to the existence of some definite precedent for the action which may be brought. That would destroy the flexibility required to maintain the utility of the court, in the demands necessarily made for the exercise of its authority in new cases always arising out of the enterprises and progress of society. The novelty of the case can form no well-founded objection to the jurisdiction over it, if it falls within the limits of any defined equitable principle. That must constitute the test of the court's authority, and not the existence or absence of precedent for the case over which it may be invoked. Those principles are as broad as the just wants and necessities of civilized society require; and it is scarcely possible to imagine a case in which equitable relief may be proper which they do not include. If there are cases of that description, the present one, certainly, is not among them in any view which should be taken of it. For if the plaintiff must fail it must be for want of proof, and not because of any infirmity in the power of the court to administer relief. If her case has been made out it is for the reason that the conveyance which was made was, in the sense in which the term is understood and applied by courts of equity, a fraud upon her contemplated marital rights. That has been defined to include all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. (1 Story's Eq. Jur., § 187; *Gale* v. *Gale*, 19 Barb., 249.) And a case of this description must be brought by the facts within this general principle in order to secure its success.

When the conveyance in controversy was executed, the relation of the grantor to the plaintiff was of a strictly confidential nature, and a natural expectation inspired as well as implied by it was, that

upon its consummation she should succeed to all the legal rights of a wife in the property owned by him. She acquired by means of it an equitable claim upon him to that extent. But, at the same time, it was not so entirely controlling as to prevent him from discharging such other equitable obligations as he might have previously incurred to his children. It simply restrained him from disposing of his property, fraudulently, for the purpose of preventing it from becoming subservient to the rights which the laws of the State secured to a wife. It has been substantially conceded in the argument, and has been so held in the early administration of the law by courts of equity, that a similar disposition of her property by the wife would be a fraud upon the marital rights of the husband, and for that reason would not be permitted to stand. But an effort was made to distinguish the case of a disposition of the husband's property from the operation of the same principle; and reasons were assigned for it more consonant to the spirit of the times than creditable to an impartial administration of the law. The wife's proprietary interests were then generally subordinated to the paramount rights of her husband, and her separate legal existence was, for most purposes, denied. But since then a more liberal policy has been adopted, which has afforded her a degree of security equal, at least, to that provided for her husband; and with its progress her contemplated marital rights have acquired an equal degree of security. There never was any good reason why the disability imposed in this respect upon the wife, should not have been equally applied to the conduct of the husband. If it was inequitable for her to convey away her property in anticipation of marriage, in order to prevent it from becoming subordinated to her husband's anticipated rights in it, it was equally so for him to do the same. The principle that restrained her should be equally as effectual over him; for, if the act of one was a fraud, it was certainly no less so when it was performed by the other.

And so it has come to be regarded by courts of equity. The inchoate right of the wife to dower in her husband's property is considered, as it should be, as one entitled to protection. That has been held in general terms in repeated instances. (*Mills* v. *Van Voorhies*, 20 N. Y., 412; *Mathews* v. *Duryee*, 3 Abb. Ct. Appeals, 220; *Simar* v. *Canaday*, 53 N. Y., 298.) In the last case the author-

ities were fully reviewed and the conclusion adopted as the settled law, that "an inchoate right of dower in lands is a subsisting and valuable interest, which will be protected and preserved to her, and that she has a right of action to that end." (Id., 304.) And, conformably to that conclusion, the courts have protected her against conveyances made before marriage, for the purpose of placing the husband's property beyond the reach of that right. Its existence is one of the resulting consequences of marriage — a right arising out of its relation. And it is as much a fraud for the husband to place his property out of his hands for the purpose of avoiding it, as it is for a debtor who contemplates the contraction of debt, to voluntarily dispose of that owned by him, in order to defeat the efforts of future creditors to secure their payment. The latter, it has been held, cannot be successfully accomplished. (*Savage* v. *Murphy*, 34 N. Y., 508; *Case* v. *Phelps*, 39 id., 164.) And the same principle should maintain the action of the wife to vindicate herself against the success of a similar device. It has been applied in that manner in several instances, and expressly sanctioned in others. (*Smith* v. *Smith*, 2 Halst. [N. J. Chy. R.], 515; *Cranson* v. *Cranson*, 4 Mich., 230; *Swaine* v. *Perine*, 5 Johns. Ch., 482; *Thayer* v. *Thayer*, 14 Vermont, 107.) In the last of these cases the authorities were fully collected and reviewed; and it was held, as the wife during the treaty for marriage, would not be permitted, without the knowledge of the person intended to become her husband, to make a voluntary disposition of her property to defeat his marital rights, that the husband should be subjected to the same disability; and, accordingly, such a disposition of his property was not allowed to stand. This case is important, and entitled to great weight in disposing of the one now before the court. Substantially to the same effect, also, was the decision in *Petty* v. *Petty* (4 B. Monroe, 215). And they are not in conflict with *Holmes* v. *Holmes* (3 Paige, 363), which related only to the disposition of personal property, in which the wife can have no such interest as she has in her husband's real estate.

The conveyance in controversy in this case was what the law denominates a voluntary one (*Jackson* v. *Peck*, 4 Wend., 302); for it was not executed upon a valuable consideration, but it constituted a gift of the property described in it for the consideration of natu-

ral love and affection. And for that reason the grantees in it cannot be regarded as purchasers of the property conveyed to them for value. As to such a conveyance, the fraudulent intent of the grantor alone is sufficient to avoid it. (*Jenny* v. *Jenny*, 24 Verm., 324; *Wood* v. *Hunt*, 38 Barb., 302.)

And an action for that purpose may be maintained by the wife during the lifetime of her husband. (*Petty* v. *Petty*, *supra*; Scribner on Dower, vol. 2, 152.) If it could not be, her right would be in danger of being altogether defeated by a conveyance of the property by the grantees to a purchaser in good faith for value. The right itself arises from the marriage; and, according to *Swan* v. *Canaday* (*supra*), it then becomes sufficiently complete to render it the subject of vindication by action. In that respect it is analogous to the right of a creditor against the property of his debtor. Upon the solemnization and consummation of the marriage, her inchoate right to dower in her husband's real estate is brought into existence, and the only obstacle in the way of its attachment is the fraudulent conveyance made to avoid it. A present right of action for its removal at once accrues. The wrong has been done, and its vindication is an immediate necessity. Both together would seem to be sufficient to justify the maintainance of an action for the correction of the wrong.

The learned judge presiding at the trial was clearly warranted in concluding that the transaction was fraudulent. Making the conveyance, which included nearly all the grantor's property, for the purpose of defeating the right of his wife to be endowed of his property, gave it that character. And that it was made with that design, was reasonably apparent from its close proximity to the time of the marriage and the circumstance that he, at the same time, received back a life lease of the property, securing to him its rents and profits. The transaction was designed to secure him the benefit of his property while he lived, and to give it absolutely to his children upon his decease, free from dower in it to his wife. That was its inevitable result if it should prove successful; and for that reason it was properly held to have been intended and designed as the effect of the conveyance. The principle is a familiar one, frequently applied, that persons shall be presumed to have designed what may be the natural or necessary consequences of their acts;

and it is peculiarly applicable to cases depending upon the existence of an intent to defraud.

In all respects the action was well sustained by the evidence, and for the reasons already mentioned, as well as those assigned in the opinion delivered at the Special·Term, the judgment, to which no formal objection has been taken, ought to be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.