## FLOWERS v. FLOWERS.

1. There being in this State no statute inhibiting the sale of land by
   the husband to defeat his wife's right of dower, save as to lands
   to which the title came through her, an actual sale and convey-
   ance, though made for the purpose of defeating dower, will be up-
   held in favor of the purchaser against the widow's claim after her
   husband's death. But a mere colorable sale and conveyance, not
   intended by the parties to be real and operative except as a
   means of dividing the lands amongst the children of the hus-
   band after his death, he in the meantime to be the real, whilst
   the grantee in his conveyance is to be the nominal and formal
   owner, will leave the husband seized so far as the dower right is
   concerned; and his widow, after his death, may claim dower
   and have it assigned, notwithstanding such colorable and pre-
   tended conveyance made by the husband.
2. In the present case the right to dower turns upon the question
   of a real, as distinguished from a mere colorable, sale and con-
   veyance, and not upon the payment or non-payment of the pur-
   chase money in the lifetime of the husband. If the sale was real,
   and the purchase money was really due and owing by the pur-
   chaser as a *bona fide* debt against him, the dower would be as
   effectually barred as if all the purchase money had been paid.

3. As the husband had a legal right to intend the defeat of dower and to effectuate the intention, provided he did it by an actual and real conveyance, his will, subsequently executed, in which he made no provision whatever for his wife, would throw no light on the present controversy, which is simply, whether the conveyance was real or only colorable and pretended.

4. As tending to show a motive for endeavoring to defeat dower without parting with dominion and real ownership, evidence of family disturbances between the husband and wife, and between her and one of his children by a former marriage, is relevant.

May 16, 1892.

Dower. Husband and wife. Evidence. Before Judge RICHARD H. CLARK. DeKalb superior court. August term, 1891.

Reported in the decision.

CANDLER & THOMSON, for plaintiff in error.

J. A. WIMPY and W. J. SPEAIRS, contra.

SIMMONS, Justice.

Commissioners appointed to assign dower to Mrs. Catherine Flowers, widow of John Y. Flowers, assigned to her one hundred and sixty-five acres of farming land and a town house and lot. George N. Flowers objected, as executor of John Y. Flowers and individually, upon the ground that John Y. was not seized and possessed at the time of his death of the lands in which the dower was admeasured. It appeared upon the trial that George N. claimed the land in question under a deed made to him by John Y. on August 14th, 1875, in consideration of $5,500. The will was dated February 16th, 1884. The jury found the issue in favor of Mrs. Flowers, and George N. made a motion for a new trial, which was overruled, and he excepted.

1. There was evidence tending to show that the deed was made by John Y. Flowers for the purpose of defeating his wife's right to dower; and the court in its charge made the right depend upon whether this intention was established, without regard to whether there was an

actual sale and conveyance or not. The jury were instructed that if such was the husband's purpose, she would be entitled to dower notwithstanding the conveyance. We think this was error. In this State there is no statute inhibiting the sale of land by a husband to defeat his wife's right of dower, save as to lands the title to which came through her. It is true that at common law no acts of the husband during coverture, without the concurrence of the wife, could defeat dower; her inchoate right attached to all lands of which the husband was seized at any time during the coverture. But by our statute of 1826 (Cobb's Dig. p. 171) it was provided that "all conveyances of lands and tenements made by the husband alone, during the coverture, shall be legal and valid, and effectually convey the entire premises therein described, except such lands as the husband may have become possessed of by his intermarriage, . . any law, usage, custom or rule of court to the contrary notwithstanding; *provided* that nothing herein contained shall prevent the widow from her right to dower in all lands of which her husband may have died seized and possessed." The code, §1763, declares that " dower is the right of a wife to an estate for life in one third of the lands, according to valuation, including the dwelling-house, . . of which the husband was seized and possessed at the time of his death, or to which the husband obtained title in right of his wife." It is clear from these provisions that prior to the husband's death, and as to property of which he was not seized and possessed at the time of his death, and which did not come through the wife, no dower right could exist. Hence, if there was an actual sale and conveyance of the property, no right or title being reserved in the husband and none existing in him at the time of his death, there was no right of the wife, present or future, upon which the conveyance could operate as a fraud; and therefore she

could not be heard to complain of his motive in thus disposing of his property. Having the right, without her consent, to make an absolute conveyance, the necessary effect of which would be to cut off the possibility of dower, it cannot be objected that his purpose was to accomplish that result. In this case the conveyance was upon its face absolute, and there is no claim that the property came through his wife. If there was in fact an absolute sale and this conveyance was intended to operate as a present and effectual transfer of the grantor's rights in the property, the transaction must be upheld in favor of the purchaser against the claim of the widow. If, however, it was merely a colorable sale and conveyance, not intended by the parties to be real and operative except as a means of dividing the lands amongst the children of the husband at his death, he in the meantime to be the real, whilst the grantee in this conveyance was to be the nominal and formal owner, this would leave the husband seized, so far as the dower right is concerned; and his widow, after his death, could claim dower and have it assigned, notwithstanding such colorable and pretended conveyance.

Though there is no direct adjudication of this court upon the question, our decisions, so far as they go, are in harmony with what is here said. The same view is upheld in other States having statutes similar to our own. See 5 Am. & Eng. Enc. of L., tit. Dower, pp. 886, 912; Stewart, Husb. and Wife, §268; 1 Scribner on Dower, chap. 29, §18; ed. of 1883, p. 616. In Connecticut the statute confers upon the widow dower in "one third part of the real estate of which her husband died possessed," the word " possessed," as here used, being held to be synonymous with " seized." In the case of Stewart v. Stewart, 5 Conn. 317, the husband executed a deed conveying all his real estate to his children, and placed it in the hands of a third person to be

delivered at his death.   On the happening of the event
the deed was delivered in accordance with his directions,
and it was held that the instrument was strictly a deed,
taking effect from the time of its delivery to the depos-
itary, and that the widow was thereby barred of her
dower.   In respect to the objection urged in behalf of
the widow, that it was fraudulent as against her, Hos-
mer, C. J., said :   " Was the deed fraudulent as relative
to Mrs. Stewart ?   This depends entirely on the *right*
which she had to the estate conveyed, *anterior* to the
death of the husband.   If she had no right which the
law recognizes, then the delivery of the deed could be
no fraud on her right ; that is, no fraud on a nonentity.
By the English law the right to dower originates on the
marriage ; but by our law it takes its origin at the hus-
band's death.  ' Our ancestors did not think it expedient
to restrain that free transfer of real estate which the
interest of the community requires ; and for this reason,
the law has given to the wife no lien or right, legal or
equitable, to the husband's estate, during his life.   Her
condition, in this respect, is like that of her husband's
children, or other heirs ; and the only right of either is,
to such estate as he has not disposed of."   The cases
cited by counsel as contrary to this view are clearly
distinguishable from the case in hand.   The first of
these cases is from Vermont, where a similar statutory
provision existed (Thayer *v.* Thayer, 14 Vt. 107) ; but
in that case the decision was placed upon the ground
that the conveyance, which was without any valuable
consideration, was intended not only to defeat the wife
of her dower, but to secure to the grantor the posses-
sion, use and control of the property during his life.
Both in that case and the case in 24 Vt. 324 (Jenny *v.*
Jenny), the possession was in the husband at the time
of his death.   The case of Brewer *v.* Connell, 11
Humph. (Tenn.) 500, was placed upon a statute which

declared that any sale with intent to defeat the widow of dower should be void. Other cases cited by counsel were decided in States where the common law rule had not been changed and the concurrence of the wife was necessary to divest dower.

2. The court below held that even if part of the purchase money of this property had been paid in good faith by the grantee, he acquired no title if the note for the remainder was not paid before the grantor's death. The charge on this point was as follows: "If George N. Flowers, during the lifetime of his father, John Y. Flowers, had in good faith paid this purchase money, . . $5,500, $1,000 at the beginning and $4,500 afterwards, then the title would have been transferred to him, so that it would not have been in John Y. Flowers at his death, unless it might have been disregarded on account of some fraud against the widow by the parties involved in that title; that I do not charge you at this time, but I may do so before I get through. Then if that had been the case he would stand as the possessor as I say, without more, and the title would be in him at the death of John Y. Flowers. But if you should believe from the evidence that that note was not paid during the lifetime of John Y. Flowers, then, so far as that goes, it would not convey to him such title as might be consummated by the payment of the purchase money."

From what we have said in the preceding division of this opinion, it will be seen that the right to dower in this case turns upon the question of a real, as distinguishable from a merely colorable sale and conveyance; and this being so, it does not matter whether the whole of the purchase money was paid in the lifetime of the husband or not. If the sale was real and the purchase money was in fact due and owing by the purchaser as a *bona fide* debt against him, dower would be

as effectually barred as if all the purchase-money had been paid. In *Day* v. *Solomon*, 40 *Ga.* 32, where the land was not paid for and it was held that dower was not barred, there was not merely a failure to pay, but there was no conveyance of the title, the purchaser holding under a bond to convey. It was held, therefore, that the husband, at the time of his death, had a perfect legal title.

3. It was further alleged as error that the court allowed the applicant for dower to read in evidence the will of John Y. Flowers, over objection that the same was irrelevant. This will provided: for the payment of the testator's debts; that his executors should sell at public outcry, after advertisement, all his property real and personal, and collect all his notes and accounts; and that proceeds arising from the sale of the property and money collected on the notes and accounts, after the payment of the debts, should be divided equally, share and share alike, between the six children of testator, of whom George N. Flowers was one. George N. was appointed executor. It was contended that the will was relevant testimony to show that the widow was ignored, and that John Y. Flowers, at the time of its execution, was endeavoring to defeat his wife of all interest in his estate and using George N. Flowers to carry out his plans. In reply to this it is enough to say that if the husband, as we have shown, had a legal right to intend the defeat of dower and to effectuate the intention by an actual and real conveyance, a will subsequently executed, in which he made no provision for the wife, would throw no light on the present controversy, which is simply whether the conveyance was real or only colorable and pretended.

4. Error is also assigned upon the admission of testimony relating to family disturbances between the husband and the wife and between her and one of his

children by a former marriage. As tending to show a motive for endeavoring to defeat dower without parting with dominion and real ownership, we think this testimony was relevant. As the case is to go back for a new trial, it is unnecessary to enter into a discussion of the evidence. What has been said disposes of the material questions presented by the record. For the reasons stated, we think the court erred in not granting a new trial.                                        *Judgment reversed.*