1. While in this State there is no statute inhibiting a conveyance of land by a husband to defeat his wife's right of dower, save as to lands the title to which came through her, and an actual conveyance, though made for the purpose of defeating dower, will be upheld in favor of the grantee against the wife's claim after her husband's death, yet a mere colorable conveyance, not intended by the parties to be real and operative, the grantor to be the real owner and the grantee to be the nominal and formal owner only, will leave the husband seized so far as the dower right is concerned, and his widow, after his death, may claim dower and have it assigned, notwithstanding such colorable and pretended conveyance by the husband. Flowers v. Flowers, 89 Ga. 632
(15 S.E. 834, 18 L.R.A. 75).
(a) A bona fide voluntary conveyance, though made for the purpose of defeating the wife's right to dower, stands upon the same footing and has the same effect as a conveyance based on an actual sale. Pruett v. Cowsart, 136 Ga. 756
(72 S.E. 30); Harber v. Harber, 152 Ga. 98 (3 a) (108 S.E. 520).
2. The deceased husband of the petitioner, by a deed in his lifetime reciting a consideration of ten dollars and natural love and affection for the grantee, his sister, conveyed described realty to her which she by will devised to the defendants in the present action. In an equitable suit, brought by the wife of the grantor after the death of the grantee, it *Page 255 
was alleged that the deed to the grantee was a voluntary conveyance, induced by certain described acts of fraud, deceit, misrepresentation, and undue influence on the part of the grantee, and was a colorable conveyance, which was made to defeat the petitioner's right to dower and year's support as the wife of the grantor, and was never intended to be real and operative. It was alleged that the grantor remained in exclusive possession and control of the property until his death about four years after the execution of the deed; that the petitioner had made demand on the representative of the grantor's estate to bring suit to recover the property as belonging to the estate, and that he refused to do so; and that, as the grantor's widow and sole surviving heir at law, she has the right to maintain the present action in her own name. Held: Under the evidence the jury was authorized to find that the deed attacked by the petitioner was a bona fide conveyance and not a mere colorable transaction, and to return a verdict in favor of the defendants.
Judgment affirmed. All the Justices concur.
 No. 14928. SEPTEMBER 9, 1944.
 STATEMENT OF FACTS BY DUCKWORTH, JUSTICE.
Mrs. W. W. Cheatham filed an equitable petition in the superior court of Jenkins County against W. H. Sheppard Jr., William B. Jones, Mrs. C. G. Lambach, James D. Palmer, and Miss Alice Palmer, which as amended and after certain portions had been stricken on demurrer alleged substantially as follows: For five years previously to December 5, 1936, Mrs. W. E. Cain, sister of W. W. Cheatham, the husband of the petitioner, lived in the home of the husband and the petitioner, and had been wholly supported by him for a period of twenty years. W. W. Cheatham was the owner of described realty in the City of Millen, Jenkins County, Georgia, and on which was the home occupied by him and the petitioner. On December 5, 1936, he conveyed this property to his sister, Mrs. W. E. Cain, by voluntary deed of gift upon a recited consideration of "ten dollars and the natural love and affection he has for his sister;" but the land and premises remained in his possession and exclusive control until the date of his death on January 4, 1941, and Mrs. Cain never claimed any title, ownership, or possession thereof during his lifetime, and seized possession only after his death. The said deed was a mere colorable sale and conveyance, and was not intended by the grantor to be real and operative. Mrs. Cain was never at any time, before the death of W. W. Cheatham, more than a nominal and formal owner *Page 256 
of the property. She obtained the said deed of gift from him through fraud, deceit, misrepresentation, and undue influence, with the express purpose of defeating the petitioner of her right of dower and year's support as the surviving widow and sole heir at law of W. W. Cheatham and of any other interest in his estate. W. W. Cheatham died on January 4, 1941, leaving a will, a copy of which was attached to the petition as an exhibit and made a part thereof, by the terms of which he bequeathed to the petitioner the sum of $1500 in cash, expressly providing that it was in lieu of dower and year's support, and enjoining that before taking under the will she should file an express renunciation of her right to dower and year's support. On February 3, 1941, William B. Jones, one of the defendants, was duly appointed and qualified as administrator cum testamento annexo of the estate of Cheatham, and immediately entered upon the discharge of his duties as such.
Mrs. Cain died on February 27, 1942, leaving a will, a copy of which was attached to the petition as an exhibit and made a part thereof, by the terms of which she devised to the defendants herein the same realty which had been conveyed to her by Cheatham on December 5, 1936. The estate of W. W. Cheatham is hopelessly insolvent, and the only funds that have come into the hands of the administrator amount to $731.59, the proceeds of an insurance policy and a note, and the estate is indebted to the petitioner as a creditor in the sum of $5369.66. The petitioner made demand on William B. Jones, as administrator of the estate, to bring suit against Mrs. Cain during her lifetime to recover the property here involved, but he refused to do so; and therefore the petitioner, as the widow and sole heir at law of W. W. Cheatham, and as an unpaid beneficiary under his will, and as a creditor of his estate, has the legal right to bring this suit in equity for the protection of her interest. The prayers of the petition as amended were: that the deed to Mrs. Cain be surrendered up and canceled as null and void; that the defendant, William B. Jones, as administrator of the estate of W. W. Cheatham be required to take control and possession of the property and administer it for the purpose of satisfying the demands of the petitioner; that the defendants be enjoined from alienating or undertaking to complicate the paper title to said property pending the determination of the suit; for process and a final judgment and decree granting *Page 257 
the relief prayed for; and for such other and further relief as may be deemed meet and proper.
W. H. Sheppard Jr. and Mrs. C. G. Lambach filed an answer denying the substantial allegations of the petition. William B. Jones filed a similar answer, and by plea set up that Mrs. Cheatham took possession of and carried away described personal property of the estate which had been bequeathed to named persons, and that she has refused his demand that such property be delivered to him as belonging to the estate. He also set up that W. W. Cheatham, in the execution of his general plan for the division of his property, gave to his wife approximately $20,000 and a considerable sum of money in a checking account, after making his will and executing to Mrs. Cain a deed conveying the property here involved; such property having been deeded to her because she was extremely fond of living in Millen, and Mrs. Cheatham had often expressed a dislike to living in the community, and did not want to live in the family home after the death of her husband. He also alleged that he had collected $731.39 as funds of the estate; that the petitioner had advised him that she expected to file an application for a year's support; and that, if it were allowed, there would be nothing for him to administer. He prayed that the petitioner be ordered to return to him the property alleged to have been seized by her, and to purge herself of her misconduct, if the court should retain jurisdiction of the case; and that the court direct him as to the disposition of the property and affairs of the estate and how he should proceed with his duties.
On the trial of the case, Mrs. Cheatham testified substantially as follows: She married W. W. Cheatham on September 6, 1926. From that date to 1935, when he sold his business, he was a successful manufacturing chemist in Atlanta, accumulating about $50,000 and receiving $36,000 for his business, whereupon he and the petitioner moved to Millen, Georgia, and he purchased the property here involved. The petitioner became acquainted with Mrs. W. E. Cain, sister of W. W. Cheatham, at the time she met Cheatham. Mrs. Cain had no income and was supported by Cheatham. She lived in the home of the petitioner and her husband until his death in January, 1941. Mrs. Cain was very antagonistic toward one Lapsey, a boarder in the home, and in 1936 falsely told Cheatham that the petitioner and Lapsey were *Page 258 
having improper relations. The petitioner had in fact always lived faithful and true to her husband; but Mrs. Cain continually poisoned the mind of Cheatham in the subject-matter mentioned, and he lived in a rage of ill temper and suspicion during October, November, and December of 1936, and at the request of Mrs. Cain left the petitioner downstairs and moved upstairs in a room next to that of Mrs. Cain. Under these circumstances, the deed to the property here involved was made to Mrs. Cain, and it was kept secret from the petitioner and she had no knowledge of it until after Cheatham's death, when Mrs. Cain informed the petitioner that she owned the property and ordered her to vacate. The deed was based on no valuable consideration, and, though Cheatham had executed it, he remained in absolute possession and exclusive control of the property for four years after its conveyance and until his death in January, 1941. Mrs. Cain never claimed any title, ownership, or possession of the land and house, and never undertook to exercise any control or possession of the same. The deed was made to her because of the fraudulent, deceitful, and false misrepresentations concerning the petitioner's conduct with Lapsey, and at a time when the grantor was a very sick man mentally and was not normal.
Marvin G. Russell testified that in company with Jimmy Nelson he went to Augusta, Georgia, to see William B. Jones, and together they talked with him about the estate of Cheatham, and asked him to bring a suit as executor or administrator to recover the property here involved and certain money in a bank in the name of Mrs. Cain. They made a demand on him to bring suit, but he absolutely refused to do so, saying that he did not want to bring any more hard feelings into the case. In response to an inquiry from Jimmy Nelson as to whether or not Mrs. Cain had agreed to remember him handsomely in her will, Jones replied, "Well, I don't know but I hope she does." The witness also testified that he knew Cheatham from about 1928 to 1933, and represented his corporation, Cheatham Chemical Company, as counsel from 1933 to about 1935. Cheatham was a money-making man and was always afraid that his wife would sue him for alimony, and he switched his money from one bank to another, being worth about $75,000 or $80,000. He owed no debts, but was fearful *Page 259 
people were trying to maneuver him into a position to "shake him down."
Jimmy Nelson testified that he was a friend of Cheatham and lived in his home in Millen, Georgia, in 1936. On account of charges made by Mrs. Cain, Cheatham accused his wife of not being faithful to him, and hid his money in the name of Mrs. Cain to prevent Mrs. Cheatham from getting any of it. On one occasion the witness himself went to Savannah for Cheatham and got $25,000 from a bank there. $23,000 of this amount was put by Cheatham in a bank in Millen in the name of Mrs. Cain. Cheatham told him he had big sums of money in various banks in other people's names, and seemed to be wanting to hedge against suits. While the witness lived in the home, Mrs. Cain never claimed the money which had been deposited in certain banks in her name, or even the house which had been deeded to her. The witness corroborated the testimony of the witness Russell as to a visit to William B. Jones and his refusal to bring suit to recover the property deeded to Mrs. Cain.
J. H. Simpson testified for the defendants that he knew W. W. Cheatham during his lifetime and he was a good friend of the witness. When Cheatham deeded the house and lot to his sister, Mrs. Cain, in December, 1936, he brought the deed to the office of the witness to have it recorded, and at some length discussed with him the matter of the deed and his affairs, the witness being then and now clerk of the superior court of Jenkins County. Cheatham stated that he had made ample provision for his wife and wanted to provide for his sister, Mrs. Cain, by giving her the home. He wanted his sister to have a home as long as she lived, and this was the reason he was deeding the property to her. He appeared to be perfectly normal, sane, and in his right mind at the time, and understood fully what he was doing.
J. G. Gunn testified that he knew Cheatham and his wife for several years before Cheatham's death. During Cheatham's last illness and shortly before he died, Mrs. Cheatham called the witness to the home and told him about money Cheatham had given her and witness thinks she counted up several thousand dollars. She also told him about money which Cheatham had given Mrs. Cain, and about the deed which he had made to her conveying the house and lot, and she wanted the witness to get a lawyer and try to have the deed changed. *Page 260 
Dr. Q. A. Mulkey testified that he knew Cheatham several years prior to his death and treated him in his last illness. The witness went to the home of Cheatham a day or two before his death and after he was stricken. Cheatham discussed his business affairs with the witness, and said that he had made ample provision for his wife in cash money, and that he had also made provision for his sister, Mrs. W. E. Cain, by giving her certain money and deeding her the home place. He appeared to be normal mentally and to have all of his mental faculties, other than being a sick man, and appeared to understand the nature and consequences of his statements relative to the disposition of his property.
Walter Harrison testified that he knew Cheatham several years prior to his death and did business with him, the witness being in the insurance business and having written the fire insurance on the property here involved. The insurance was written in Cheatham's name prior to December, 1936. Some time in December, 1936, about the date of the deed, Cheatham came to the witness and directed him to change the insurance to Mrs. Cain's name, stating that he had deeded the property to her as he wanted to make ample provision for taking care of her after his death, and he wanted to provide her a home as long as she lived. Under Cheatham's instructions the witness changed the insurance policy covering the property from Cheatham to Mrs. Cain. It was a normal and ordinary business transaction, and the witness did not observe anything unusual about Cheatham's conduct at that time.
G. M. Reynolds testified that he was a barber and did Cheatham's work, and he came in the witness's shop some time during December, 1936, to get some work done. Cheatham often talked to the witness about his business affairs, and on that occasion told him about giving his home to his sister, Mrs. W. E. Cain, saying that he had deeded her the property so as to provide her a home.
William B. Jones testified that Cheatham and Mrs. Cain were his cousins. Cheatham told him that he had made ample provision for his wife in cash, and that he had provided for Mrs. Cain by giving her some money and the home, this appearing to be his wishes and desire as to the disposition of his property. The witness is the personal representative of Cheatham's estate, and has in hand assets of between $300 and $400 after paying at Mrs. Cheatham's direction $307.75 on the funeral bill of $615.50. *Page 261 
He has no property in hand for administration besides the cash which is on deposit. Claims against the estate, which he itemized in his testimony, have been filed in the total amount of $2290.71 There is about $2300 in claims and debts, in addition to a judgment in favor of Mrs. Cheatham for $6685.31 against the estate making a total of about $9000. With the exception of about $300 in hand, he has no money, properties, or assets with which to pay the debts of the estate or even the administrator's fee. Cheatham put $23,000 in a bank for his sister, and this is not an asset of the estate. He knows exactly what Cheatham did. He refused to bring suit against Mrs. Cain, but it is absolutely false that the reason was that he had an interest in her estate or that he was a legatee, and he made no statement to that effect. Every effort has been made to determine if there are any available assets in the name of Cheatham, and there are none.
W. H. Sheppard Jr. testified that he was cashier of the Bank of Millen, executor under the will of Mrs. Cain, and handled her business and affairs for several years before her death. She kept an account in his bank, but it was never over $1500 until Cheatham deposited some money in her name in the fall of 1936. He knew about Cheatham's deed to her. After the property was placed in her name, he looked after the payment of taxes and insurance for her, knew that the title was in her, and he dealt with the property as hers until her death when he took charge of it as her executor. He knew Cheatham intimately, and was a cousin to him and to Mrs. Cain. Mrs. Cain had no property, so far as the witness knew, before Cheatham's death except some money which probably he gave her. Mrs. Cain lived in Cheatham's home until he died, and previously she had been housekeeper for another. The bank's account with her went back to 1933.
The plaintiff introduced in evidence a judgment obtained by Mrs. Cheatham on September 7, 1943, against the administrator of the estate of W. W. Cheatham in the sum of $5369.66, with interest of $1315.66, and also the deed of December 5, 1936, whereby Cheatham conveyed to Mrs. W. E. Cain the realty here involved for a consideration of "the sum of ten dollars and the natural love and affection he has for his sister, the said Mrs. W. E. Cain." *Page 262 
The jury returned a verdict in favor of the defendants. The petitioner's motion for new trial, based only on the usual general grounds, was overruled, and the exception here is to that judgment.