## ELIPHALET TUCKER *vs.* MARSHALL ANDREWS, *and* PERES ANDREWS.

A voluntary conveyance of her property made by a woman after a marriage contract and before the marriage, which conveyance is intentionally concealed by the parties to it from the intended husband, is fraudulent in equity as to him, and will be set aside.

It is the settled practice of a court of equity to direct a proper provision for the wife, whenever her property becomes subject to its jurisdiction.

THIS was a bill in equity, and was heard on bill, answer and proof. The principal allegations in the bill were, that the plain-

tiff had made a contract of marriage with a *Mrs. Bates,* who had personal property to the amount of fourteen hundred dollars, and that the marriage took place between them *April* 5, 1832 ; that the defendants aspersed the character of the plaintiff, and by false and fraudulent representations influenced and induced *Mrs. Bates,* without the knowledge of her intended husband, on the morning of the day of the marriage, with full knowledge, that it was expected to take place that day, and with the view of defrauding the plaintiff of the rights which would accrue to him when this marriage contract was perfected, to convey all her personal property to the said *Marshall Andrews,* on the said *Marshall's* sole promise to pay her twenty-five dollars annually during her life, taking his bond for the payment thereof without security, as the sole consideration. The bill also charged, that *Mrs. Bates* was a weak and ignorant woman, and signed the papers without a knowledge of their contents, and that they were different from her expectation : alleged a demand of the property, and refusal to deliver it ; and concluded with a prayer for a discovery of the property, and that a conveyance of it to the plaintiff might be ordered.

The defendants made answers severally. *Peres Andrews* denied, as far as related to himself, every allegation in the bill.

*Marshall Andrews* admits, that the marriage contract was entered into, and that the marriage took place, as stated in the bill, and that she had certain personal property particularly specified. He says, that a short time before the marriage, *Mrs. Bates* of her own motion, and without any intimation from him, commenced a conversation in which she expressed a determination to place her property in a situation, that she might be able to receive a certain stipulated sum annually in place of it, and requested him to consult counsel, as to the mode in which it could be done ; that he did so consult counsel and inform her of the result ; that she told him, she had property and no children ; that she chose to dispose of her property to her own liking ; that as he was her nephew with whom she had lived a number of years, and from whom she had received many acts of kindness and attention, she resolved to repay him, as she had an undoubted right to do ; and that she then solicited him to accept an assignment of the property secur-

ing her twenty-five dollars annually, that sum, as she remarked, being as much as she wanted; and that in consequence of this request he did accept the assignment, and gave her his bond to pay that sum annually, and offered to procure a surety, but she did not wish it. He says, that the time of doing the busines was fixed on by the gentleman who made the papers; that they were read, examined and well understood at the time; that while the subject of the marriage was in contemplation, she expressed her determination to the plaintiff, that she would not marry him on any condition, but to have her property secured to her, or to remain at her own disposal, or that he should allow her to secure the same in any way she thought proper, without said *Tucker's* exercising any control over the same in any way whatever; that he, the respondent, believes that *Tucker* then and there acquiesced and consented to these terms; that although the interest was more then twenty-five dollars per year, that this was well understood by her; that before and since the demand of the plaintiff, *Mrs. Tucker* has earnestly requested the respondent to keep the property and perform his agreement with her; that she has since then received money on said bond; and that the bond is still retained in force against him.

All the other allegations in the bill are wholly denied, and proof called for.

The proof in the case was voluminous but its import will be found in the opinion of the Court, and therefore is not given here.

The arguments were in writing.

*Deblois*, for the plaintiff, cited the following authorities, and made extracts from many of them. *Newland's Eq.* 417; *Payton* v. *Bladwell*, 1 *Vernon*, 240; *Redman* v. *Redman, ibid,* 348; *Lambe* v. *Haman,* 2 *Ver.* 348; *Kemp* v. *Coleman,* 1 *Salk.* 156; *Gale* v. *Lindo,* 1 *Ver.* 475; *Drury* v. *Hooke, ibid.* 412; *Keat* v. *Allen,* 2 *Ver.* 588; *Thurston* v. *Benson,* 1 *Peere Wms.* 459; 2 *Powell on Con.* 162 to 167; *Pitcairn* v. *Oglander,* 2 *Vesey,* 374; *Small* v. *Brackly,* 2 *Ver.* 602; 2 *Fonbl. Eq.* 266; *Carleton* v. *Earl of Dorset,* 2 *Ver.* 17.

*S. Emery* argued for the defendants.

The opinion of the Court was drawn up by

WESTON C. J. — *Peres Andrews* has, in his answer, denied all the allegations made in the bill against him ; and as they have not been sustained by proof, he is to have judgment for his costs.

Whatever controversy there may be with respect to some of the facts, charged in the bill against *Marshall Andrews,* it is manifest from the bill, his answer and the proof, that the plaintiff's wife, when on the eve of marriage, and on the morning of the day when it was solemnized, assigned her property to *Marshall,* for the avowed purpose of keeping it from her intended husband. The answer states, that at a prior period, she expressed to the plaintiff her determination to take this course, in which he appeared to acquiesce. It may admit of doubt whether this averment is so far responsive to the bill, as to entitle it to be regarded as established, until disproved. It is apparent, however, from the proof, that the business when done, was intended to be concealed from the plaintiff; and to *Philip Farrar, Marshall* spoke of his disappointment, when the facts came to his knowledge.

If we take the answer as true upon this point, her requisition was, that her intended husband should secure her property to her separate use, or allow her to do so. He was to do the one or the other. The alternative was proposed for his acceptance, contemplating evidently an arrangement, in which he was to be consulted. From the manner in which the business was done, behind the back of the plaintiff, as well as the subsequent declarations of *Marshall Andrews,* it is sufficiently apparent that he was conscious, that the disposition actually made of her property, would not have received the plaintiff's approbation. To the *Farrars, America* and *Philip,* he declared that the plaintiff had an eye to her property, in forming the connexion, and expected to enjoy it, and that he was disappointed, when he found his expectations defeated. And yet the answer avers, that he was apprized from the beginning, that he was to derive no benefit from it, and expressed his acquiescence. If these declarations do not disprove this part of the answer, they establish the fact, with the other testimony, that he was fully aware that his trans-

actions with the plaintiff's wife, were such as could not have been satisfactory to him.

It is true, *Mrs. Tucker* had a perfect right to dispose of her property at pleasure. And if all had been done openly and fairly, the husband could have had no just right to complain. She had a right to prescribe her own terms in forming the connexion, which he was equally at liberty to accept or decline. But she had no right to enter into secret transactions, in reference to her property. Nor could others lawfully conspire with her, to disappoint his just expectations, or in making a disposition of her property, without his knowledge.

If the transaction was fair between the immediate parties, in regard to which it is not necessary to give an opinion, it is constructively fraudulent in contemplation of law, if imposition upon the husband was meditated by intentional concealment, which we cannot but regard as satisfactorily proved.

Courts of equity have frequently interposed to afford relief in cases of fraud, actual or constructive, in marriage settlements. Many authorities to this effect, have been cited for the plaintiff. And where no formal marriage settlement has been entered into, any disposition made by a woman, in contemplation of marriage, of her property to her own separate use, without her husband's privity, has been held void, being in derogation of his marital rights and just expectations. *Bowes v. Strathmore*, 2 *Bro. Ch. R.* 345; *Jones v. Martin*, 5 *Vesey*, 266, note; *Fortescue v. Hannah*, 19 *Vesey*, 66; 1 *Story's Com. on Equity*, 271. And a secret conveyance made by a woman thus circumstanced, in favor of a person, for whom she was under no obligation to provide, has been vacated. *King v. Colton*, 2 *P. Will.* 357, 674. But a reasonable provision made for the children of a former marriage, under circumstances of good faith, would be sustained.

The husband in this case has preferred his suit to this Court, sitting as a Court of equity, to recover the personal property of his wife. It is the settled practice of a court of equity, to direct a proper provision for the wife, whenever her property becomes subject to its jurisdiction, whether the suit be instituted by the husband, to recover her property, not yet reduced to his possession; or whether it be by his representatives or assignees; or by

the wife or her trustee, seeking a provision out of the property. The doctrine by which the equity of the wife is protected in such cases, and the authorities upon which it is based, were examined by *Chancellor Kent*, in the case of *Kenny* v. *Udall et al.* 5 *Johns. Ch. R.* 464, to which we refer, as a very satisfactory elucidation of the law and practice of courts of equity upon this subject. We sustain the bill; but shall direct a suitable provision for the wife.

The Court in this case appoint *Samuel T. Brown*, trustee of the wife, who is required to give bond to the Judge of Probate for the county of Oxford, with sufficient surety or sureties, in the penal sum of twelve hundred dollars, conditioned for the faithful performance of his trust. And they do hereby order and decree, that the said *Marshall Andrews* pay over to said trustee the sums of money by him collected, with the interest thereof, on the demands assigned to him by *Mrs. Tucker*, deducting therefrom such sums, as he may have already paid to her; and that he deliver to said trustee such of the demands as may not have been collected, cancelling the assignment thereof, and that he deliver and assign to said trustee such substituted demands, as he may have received; whereupon the bond, by him executed to *Mrs. Tucker*, is to be given up to him to be cancelled.

And it is further ordered and decreed, that if the said *Eliphalet Tucker* shall give bond, with sufficient surety or sureties, to the said trustee in the penal sum of one thousand dollars, conditioned that the amount of said demands, which has been or which may be collected, shall be paid to his wife, *Mercy Tucker*, for her own use, if she shall survive him; and that the interest thereof, with such part of the principal as the court may hereafter order, shall be paid to her separate use, whenever during his life, he may cease to maintain and support her, then the said trustee is to deliver said monies and said demands to the plaintiff for his use; otherwise the said trustee is to retain the same, until the court shall make further order and decree in the premises.