GEORGE W. BARRY ET AL.
vs.　　　　　　　　　　MARCH TERM, 1847.
WILLIAM J. BARRY ET AL.

[WAIVER OF COMMISSIONS—PETITION TO VACATE DECREE—LAPSE OF TIME.]

A TRUSTEE may waive his claim to commissions, where that claim exists.

The enrollment of a decree obtained by surprise, may be vacated, either upon a bill or petition.

A decree or order, after delay and lapse of time, cannot be set aside, except upon very strong grounds.

The order sought to be set aside, was passed on the 18th of November, 1844, and no objection is made until August, 1846. HELD—that upon the ground of delay, alone, there would be great difficulty in granting relief against the order, even if the merits were with the petitioner.

[On the 24th of April, 1839, a decree passed this court for the sale of the real estate of Robert Barry, deceased, for distribution among his heirs at law, and appointing Bernard W. Campbell trustee for that purpose. The trustee being unable to effect an advantageous sale, the property was rented out by him, and on the 8th November, 1844, an order was passed authorizing him to continue to rent the same, and to apply portions of the rents to its repair; and referring the case to the Auditor for an account. On the 18th of the same month a further order was passed, allowing the trustee a commission of eight per cent. upon his collections, and disbursements. Sundry accounts were stated by the Auditor, and ratified by the court, crediting the trustee with his commissions, and with certain payments and disbursements made by him, and charging him with the rents which he had received; and afterwards on the petition of John Glenn, who had become purchaser and assignee of five-sevenths of said property, an order was passed, dated 23rd February, 1846, directing the trustee to sell the same, upon the terms mentioned in the decree. It was accordingly sold to said Glenn, at public sale on the 6th May, 1846, for the sum of $12,000, and an order of ratification *nisi* of the sale was passed on the 28th of the same month. On the 24th

of August following, William J. Barry, one of the heirs at law of said Robert Barry, and one of those who had sold his interest in the above mentioned property to John Glenn, filed a petition, stating that the trustee both before and after his appointment, contracted, and agreed to charge no commission, and praying that the Auditor's accounts allowing him the same, might be corrected and that the interlocutory orders of the 8th and 18th of November, 1844, and those ratifying the Auditor's accounts, might be vacated and set aside. A petition with similar averments was filed by John Glenn, who also stated that he had purchased five of the seven parts into which the property was to be divided, relying upon the assurances of the trustee that he would charge no commission for his services, and prayed that the same might not be allowed. The answer of the trustee to the petition of William Barry, with which his answer to that of said Glenn substantially agreed, stated, that it was thought at one time that the property could be sold by an agent, in which case he promised to undertake the duty as a friend of the heirs, charging no commission for selling and distributing the money, but that he never contracted to make no charge as trustee under the appointment of the court. That, could the property have been sold under the decree in a reasonable time, and without involving him in extraordinary labor and trouble, he had intended charging no commission beyond what would cover his expenses, and to that extent believed he had expressed himself. The trustee also denied that he had contracted to make no charge for renting the property, &c.; he admitted, that after the sale, he had mentioned to the purchaser that he did not design charging a commission on the purchase money, but upon reflection he had since determined to submit the question to the court, in view of his trouble in discharging the trust.

A great deal of testimony was from time to time taken in the case, and the questions presented by the petitions having been argued before the Chancellor, he at this term delivered the following opinion:]

THE CHANCELLOR:

In deciding upon the propriety of allowing commissions to the trustee upon the sales of the property, the court is not embarrassed by any previous order making such allowance, no such order having been passed; the sale itself, indeed, not being finally ratified.

That a trustee may waive his claim to commissions, where that claim exists, has been decided by the Court of Appeals in the case of *Ridgely* vs. *Gittings*, 2 *Harr. & Gill*, 58, and of course is not to be disputed, nor has it been disputed in this case.

Without imputing to the trustee any improper conduct in this case, or any the least desire to escape from his engagement in reference to the claim for commission on the proceeds of the sales of the property made by him, (and the court certainly means to make no such imputation,) I am, nevertheless, of opinion, after a close examination of all the evidence, that it was distinctly understood that no such charge was to be made by him.

And I am further of opinion, that when Mr. Glenn purchased five out of the seven shares into which this estate is to be divided, he was well warranted in believing, both from the oral and written declarations of the trustee, that the property would be sold by the latter, unburdened by the charge of commissions. This, the Chancellor thinks, is the conclusion to which any mind must come, after a careful examination of all the evidence.

It is also clear, he thinks, that in some of the conversations and letters of Mr. Campbell upon the subject of selling this property, a judicial appointment for the purpose was within the contemplation of the parties; and I do not, therefore, see how the distinction taken in the answer, between the duties of an agent and those of a trustee, appointed by the court, can avail him.

Without going into a detailed investigation of the proof, the Chancellor upon this statement of the conclusion to which an examination of it has brought him, considers it proper to pass an order disallowing the claim to commissions upon the sales of the property.

The question raised by the petition of William J. Barry is a different one. He has no interest in the proceeds of the sale, having previously thereto sold and conveyed his share of the estate to Mr. Glenn. His interest is limited to the rents and profits, of which he was entitled to one-seventh, to the period of his sale. He alone petitions for a re-examination of the accounts, and a disallowance of the commissions already allowed to the trustee upon the rents. The other parties, therefore, must be regarded as acquiescing in these allowances, or at least considered unwilling to embark in litigation with respect to them.

William J. Barry prays that the enrollment of four orders of the court, dated the 8th and the 18th of November, 1844, the 7th of January, 1845, and the 21st of February, 1846, may be vacated and set aside, and that the accounts of the Auditor may be re-examined and corrected in regard to the commissions, and some other allowances, made to the trustee. He states in his petition that he had then but recently obtained a knowledge of these orders, but he does not say when he obtained the knowledge.

It has been argued on the part of the trustee, that these orders being enrolled, an original bill upon the ground of fraud, or a bill of review should be filed to vacate them, and many authorities have been cited in support of this position. Expressions were certainly used by the Court of Appeals in the case of *Burch et al.* vs. *Scott*, 1 *G. & J.*, 393, from which it might be fairly inferred, that after a decree is obtained and enrolled, a petition is not the proper proceeding to obtain a rehearing. The language of the court at page 424 is, "if a decree be obtained and enrolled, so that the cause cannot be reheard upon a petition, there is no remedy but by bill of review, which must be upon error appearing upon the face of the decree, or upon some new matter, as a release, or receipt, discovered since." But in the more recent case of *Oliver* vs. *Palmer & Hamilton*, 11 *Gill & Johns.*, 137, it was decided that the enrollment of a decree alleged to have been obtained by surprise, might be vacated upon either a bill or petition, and in *Wooster et al.* vs. *Woodhull*, 1 *Johns. Ch. Rep.*, 539, *and Lan-*

*sing* vs. *McPherson*, 3 *Johns. Ch. Rep.*, 424, petitions to vacate enrolled decrees were filed, and were considered by the Chancellor as proper proceedings for the purpose.

Without, however, deciding that a petition was or was not the appropriate remedy in this case, the Chancellor thinks the prayer cannot be granted.

The order of the 18th November, 1844, made the allowance to the trustee of commissions on the rents collected and disbursed by him, and it is not until August, 1846, that any objections is made to this allowance. It certainly would be attended with great inconvenience and be productive of injurious consequences, if the decrees and orders of the court, after so great a length of time may be set aside, except upon very strong grounds. This objection of delay struck Chancellor Kent with great force in the case of Lansing and McPherson, and drew from him the remark, that to justify the interference of the court in such a case would require a very special case. And in the case of *Wooster* vs. *Woodhull* it was stated by the same Chancellor, that there was no general or positive rule upon the subject, but that the court must exercise a sound discretion, arising out of the circumstances of each case. In both of these cases the relief sought by the petitions was denied, because of the delay and negligence of the party applying to the court for its interposition.

There would, therefore, be great difficulty in granting the prayer of the petition of William J. Barry, upon the ground of the delay in applying for relief against the orders, even if the court was satisfied that the merits were with him. But the court is not so satisfied.

The Chancellor has already expressed the opinion, that there was an understanding or engagement, that no commission would be charged by the trustee on the sales, and that Mr. Glenn purchased a large portion of the property with knowledge of that engagement, and, therefore, that as against him, certainly it would be improper to charge commissions.

But this property, it seems, was held and rented by the trustee from 1839 to 1846 ; thus devolving upon him a great deal of

extraordinary trouble and responsibility; and his accounts show, that he discharged the duties of the trust with care and fidelity. That he should have engaged to perform these onerous, and long continued duties without compensation, or that such a state of things could have been within the contemplation of the parties, at the period to which the evidence refers, is not to be assumed without the stronger proof, and I am by no means satisfied that such is the case. Under these circumstances, and with these views of the justice of the case, as presented by the petition of William J. Barry, I shall pass an order dismissing it.

The Chancellor understood, in the course of the argument, that the specific objections taken in the petition of William J. Barry, to a number of the credits allowed to the trustee in the accounts of the Auditor, were abandoned, with the exception of the allowance of commissions, and the sum of one hundred dollars retained by him on account of William J. Barry's share of the personal estate. But as this sum of one hundred dollars was applied in extinguishment of a part of the over payment to the petitioner on account of the real estate, it is not perceived how he is injured by it.

[No appeal was taken from the decision in this case.]