# SUPREME COURT.

## MARY POMEROY agt. CORNELIA V. POMEROY *et al.*

*Effect of a conveyance made by a man before his marriage, in fraud of the dower rights of his intended wife — evidence of fraud — trustee — cestui que trust.*

A voluntary conveyance of real estate made by a husband, just before his marriage, to his mother, without any valuable consideration, and kept a secret until years after the marriage, is fraudulent and void as against the wife's claim of dower.

The evidence considered and *held* to point satisfactorily to the conclusion, that the instrument executed just on the eve of marriage was for the purpose of keeping any interest in the real estate from passing to the plaintiff.

Although a trustee may become a purchaser from a *cestui que trust* upon fair principles and proper consideration, yet where the transaction has no pecuniary consideration to uphold it, it is liable to the closest scrutiny, due from courts, in such transactions.

To afford complete protection to the trustee who deals with a *cestui que trust*, such statement and information should be given by the trustee to the *cestui que trust* as to the extent and value of his interest in the estate, so that a court may see that the proposed dealing is fair and that the act was entered upon with as much knowledge, on the part of the *cestui que trust*, as was possessed by the trustee in respect to the trust property.

*Oneida Circuit, September, 1875.*

BY consent of parties the trial was had before the court without a jury.

Theodore Pomeroy died in 1860, a resident of the city of Utica, leaving his widow, Cornelia V., and several children, him surviving. He left a will in which his widow and his son, Theodore M. Pomeroy, were appointed executors and trustees, and they entered upon their duties and took posses-

sion of the assets and the estate and continued to manage the same under the will, and the powers given therein by their testator.

George Pomeroy, one of the children, was entitled, under his father's will, to one undivided share in certain real estate. There was an intimacy, for years prior to 1862, existing between George and the plaintiff, then Mary H. Matteson, and on the 19th day of February, 1862, he applied, by letter, to her father for his consent to their marriage, and there having been a treaty for a marriage, there existed an engagement between them to intermarry in the early part of 1862. The father of the plaintiff knew of such treaty for, and engagement to, marry, and acted in accordance with the sentiments which usually obtain towards parties, and regarded George as his future son-in-law and looked after his welfare and safety after the battle of Antietam, in the fall of 1862, and afterward. On the 8th day of October, 1862, the release set out in the pleadings being prepared by counsel of the widow, Cornelia, was executed by her son George, and so done by him without the payment of any money consideration, and retained by her with her private papers and without any disclosure, by her, thereof to the plaintiff or her father, until about June, 1874. The plaintiff and George Pomeroy were married the 24th December, 1862, and continued to live together as husband and wife until his death which happened January 1, 1869. There was born of such marriage only one child, to wit: Augusta M. Pomeroy, one of the defendants.

George Pomeroy died intestate and his mother, Cornelia V., set up no claim under the instrument of 8th of October, 1862, until in June, 1874, and her conversations with the plaintiff and acts in reference to the sale of the child's interest in the real estate that descended to its father, were inconsistent with the supposed title of Cornelia V., under and in virtue of such instrument. The plaintiff did not, at the time of her marriage, know of such instrument and, indeed, she had no knowledge or notice of it until after several negotiations

had been made by her in 1874, with Theodore and Cornelia
V., as to the division of the real estate, upon the assumption
that George had died seized of the interest and share therein
that came to him under his father's will. His father's will
was executed April 23, 1857, and appointed the defendants,
Theodore and Cornelia V., executors, and they qualified and
are acting as such. The instrument of 8th of October, 1862,
was witnessed by W. Crafts, a lawyer, now deceased, and
bears the signature and seal of George Pomeroy, deceased.
The consideration clause is as follows : " For and in consider-
ation of the natural love and affection which I have towards
my mother, Cornelia Pomeroy, the widow of said Pomeroy,
do hereby give, grant and assign to her and her heirs and
asssigns, all the right, title and interest which I have or may
have in the estate of my said deceased father, in any way or
manner to have and to hold the same, to her and her heirs
and assigns forever."

*H. W. Bentley* and *Henry A. Foster*, for plaintiff.

*W. & F. Kernan*, for defendants.

HARDIN, *J.* —This cause must be disposed of upon the evi-
dence taken upon the trial of issues of fact, by answering the
questions found in the order settling the issues.

The first question must be answered in the affimative.

It amply appears, by the evidence, that the instrument of
8th of October, 1862, read in evidence and referred to in the
first question, was executed, signed, sealed and left with the
grantee, Cornelia V. Pomeroy. The presumptions arising
upon the production of the paper and proof of its being signed
by George, concur with the other evidence and make out its
execution. The fact that the grantee kept it a secret and
known only to herself and the dead scrivener for twelve years
after its execution, and allowed the plainiff to act in the
belief that no such paper existed, are not sufficient to over-

come the presumptions and the evidence given in relation to the execution of the paper by George, and the reception of it by Cornelia V., and, therefore, the finding to the first question will be in the affirmative.

The paper, in terms, is broad enough to convey all the interest which George had in and to the real and personal estate of his father. Indeed, no question in respect to it was made upon the trial.

II. The second question is, " Was such transfer and assignment executed and delivered upon and for a good and valuable consideration ? "

The evidence here is found to consist of the *seal* upon the paper, the recital of " natural love and affection." No other consideration is stated, none other was proven upon the trial. The rule is well settled that where one is stated another cannot be shown (*Schermerhorn* agt. *Vanderheyden*, 1 *John.*, 139; 2 *Peere Wms.*, 203; 1 *Vesey*, 127). There was no proof to show any pecuniary or money consideration passing from the grantee to the grantor. The answer must, therefore, be taken to affirm only such consideration as the seal and paper upon their production import (22 *Barb.*, 97; 3 *R. S.* [*5th ed.*], 158).

III. " Was such transfer and assignment executed and delivered by or through any fraud on the part of the parties thereto or either of them ? "

The question calls for a consideration of the evidence before the court, in two respects: 1. Was the defendant, Cornelia V., guilty of any fraud in taking such an instrument from her son ? The evidence does not establish any fraudulent misrepresentation made by her, nor that for selfish designs and puposes, she obtained the execution of the paper, nor does it disclose any facts showing that she made a careful statement to her son of the condition, extent and value of his interest in the estate then in her hands as cotrustee with Theodore. True, it does appear that George had some knowledge of the extent of the personal property of his

father's estate at the time of the inventory thereof was taken. But that does not establish that on the 8th of October, 1862, he knew just how the estate stood and the extent of the same remaining in the hands of the executors. To afford complete protection to the trustee, who deals with a *cestui que trust*, such statement and information should, be given so that a court may see that the proposed dealing is fair, and that the act was entered upon with as much knowledge as possessed by the trustee in respect to the trust property (*Gardner* agt. *Ogden*, 22 *N. Y.*, 127). The conveyance by George to his mother, having no pecuniary consideration to uphold it, is liable to the closest scrutiny which has been declared to be due from courts in such transactions. It is true, that a trustee may become a purchaser from a *cestui que trust* upon fair principles and proper considerations (11 *Sup. C. R.* [4 *Hun*], 389). The proof does not justify a conclusion that the instrument was given upon a settlement of the matters of the estate. There was no account stated, nor accurate estimate entered into, of the extent and value of the son's interest. He may have had full knowledge of the extent of his interest in the estate on the 8th of October, 1862, but the evidence does not show that the trustee gave him that knowledge that would place him on a par with her, as to the power to conclude what was the true and full value of the share then coming to him.

But there is another aspect to the case, important to be considered here, in determining the rights of the plaintiff as affected by the instrument of 8th of October, 1862, if it is allowed to stand.

The plaintiff was then affianced to George Pomeroy, and seventy-seven days thereafter, became his wife and is now his widow. It appears that George did not inform his intended of such instrument, nor did he, in his lifetime, inform her of it. The grantee withheld from the plaintiff all knowledge, thereof until 1874. The plaintiff's right of dower in the real estate would be cut off if the instrument was upheld. It is now well settled in this country, and in this state, that volun-

tary conveyances, made by a person about to enter into marital relations with a view of cutting off the rights that would otherwise come to the one entering into the marital relations, may be set aside in a court of equity. The doctrine is too well established to be doubted. It is the duty of the court, where a proper case is made within the principles laid down in such cases, to strike down such conveyances. The evidence does not take this case out of the principles of the reported cases upon the subject. If the instrument had been known to the plaintiff before marriage, she might be held concluded by it. But, as before shown, she did not know of it until some twelve years after her marriage, and she then acted with promptness in repudiating it and in asserting her supposed rights.

The case arising in the city of New York, of *Youngs* agt. *Carter* (50 *How.*, 410), decided by VAN VORST, J., is entitled to respect, and the principles laid down there must be accepted in courts until they shall be examined and reversed by an appellate court (*See, also, Baker* agt. *Chase*, 6 *Hill*, 482 ; 4 *B. Monroe*, 215 ; 14 *Vermont*, 167 ; 2 *Halstead* [*N. J.*], 515 ; 4 *Mich.*, 230 ; 5 *John. Ch.*, 482 ; 4 *Wash. C. C.*, 224 ; *Russ*, 485).

The concealment of the existence of the papers, by George, during his seven years of married life, his statements that the real estate would ultimately be of value to his family, and the sedulous withholding of all knowledge thereof, by the grantee, for twelve years, help, very strongly, to the conclusion that it was executed to prevent the plaintiff from acquiring an inchoate or active interest in the property of his father's estate, so devised to him by his father's will.

The pecuniary condition of the mother was fair at the time of its execution ; certainly, she did not need the voluntary conveyance, by her son, to maintain herself in comfort, and her circumstances do not furnish a full and satisfactory proof of the motive which actuated him to execute and her to receive the instrument.

Pomeroy agt. Pomeroy *et al.*

It virtually swept from him all he had and that all the grantee was not in need of. If it was executed by him as a generous donation to his mother, why should he so long conceal it from his wife? If the mother understood it was a gratuity from her son, given to enable her to realize a more liberal support from, and to enjoy the result of, her son's generosity towards her, why should she keep from the plaintiff and all the rest of the world, a knowledge of the paper? The evidence points more satisfactorily to the conclusion that, just on the eve of marriage, the execution was for the purpose of keeping any interest in the real estate from passing to the plaintiff.

It has been said that the law gives dower as a means of support. If the plaintiff is allowed, in this case, to take dower in the real estate, she only comes within the rule which, in its general application, must be commended as in furtherance of justice.

Judgment ordered accordingly.