# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed October 8, 1917.

EUGENIA L. KERNAN, ETC.,
VS.
SHIRLEY CARTER, ET AL.

*Isaac Lobe Straus* and *Walter D. Eiseman* for plaintiff.

*Bernard Carter & Sons, Thomas Foley Hisky, Robert Biggs* and *Julian S. Jones* for defendants.

DUFFY, J.—

In 1911 James L. Kernan, who owned valuable property and business enterprises near the corner of Eutaw and Franklin streets, executed a deed of all this property to the James L. Kernan Company and took back in payment 5.997 shares of stock of the company out of a total issue of 5,000 preferred shares and 1,000 common shares. He then conveyed 315 shares of common stock to Frederick C. Shanberger, reserving a life estate, and 132 shares of the common stock to Shirley Carter, reserving a life estate. He then conveyed 385 shares of common stock to Frederick C. Shanberger and 165 shares of common stock to Shirley Carter absolutely.

He then conveyed 5,000 shares of preferred stock to Schanberger and Carter, trustees, in trust to pay the net income to himself for life, and after his death to other beneficiaries.

He then executed his will bequeathing $20,000 to Shirley Carter, in trust, to apply so much of the net income as shall be necessary to the support of his wife for life and after her death to divide the corpus between St. Agnes Hospital and the Institute of Mission Helpers. His wife was for many years before this, and still is, insane and confined in Mt. Hope.

The amended bill avers that the will and said transfers of property and stock were intended to defraud and deprive his widow of her interest, rights and property in his estate. It contains several prayers for relief; among them that the court renounce for her the provisions of the will and declare her entitled to dower and thirds in his estate; that the said transfers be declared null and void. Kernan died on

December 14, 1912, and his will was probated December 18, 1912. The proceeding is instituted by Eugenia L. Kernan, the widow, by her next friend. The issue arises on demurrer to the amended bill.

The first question is, can an insane widow for whom a next friend or the court fails to renounce the will within six months have her election made for her by a court of equity after the six months has expired? At common law, where the devise to the wife was in lieu of or inconsistent with her estate in dower, it was necessary for her to elect which she would take, but there was no time limit within which she must make the election. This was changed in this State by the statute which required the renunciation to be made within six months from grant of administration on her husband's estate.

The husband can bar his wife's dower by a devise or bequest, and this bar will become effective unless she takes the affirmative action required by the statute. So we find it said in the Carman case, 5 Md. 531: "We conceive that when a man dies leaving a will, making valid gifts of real and personal estate to his wife, she has not, as she had at common law, a vested right to dower in his land or to a legal share of his personalty, but her vested rights are under the will by virtue of the statute law. The law clearly gives to the husband the power by his will to bar or extinguish the common-law rights of the widow, unless she thinks proper to quit all claim to the property conferred upon her by the will. And to effect the husband's object, the wife need not declare her assent; if, however, she desires to defeat it, she must manifest her intention to do so, by an express *dissent*. And such dissent is an act which by the very terms of the law must precede her becoming entitled to or vested with, those rights which she might have claimed but for the will; for the act declares she shall be barred of those rights if she does not renounce and quit claim to the devises and bequests, and make her election to take in lieu thereof her dower or legal share of the estate. It is this election which vests in her the right of dower or legal share in lieu of what the will has given."

The court, then, after considering the language of the statute on page 532,

states: "If no exception (in the statute) is made in favor of insane persons, courts of justice have no more power to decree to them the allowance of such rights, because of their mental incapacity to comply with the requirements of the law than they have to decree in favor of sane persons failing to comply."

Counsel for complainant argued that the Carman case did not apply because the application was made by the administrator of the lunatic wife after the lapse of six months and after her death. It appears clear, however, from the above-mentioned statement of the court, that what was really decided was that an insane widow, notwithstanding her disability, loses her right to elect by the lapsing of the six months period.

This six months provision is a statute of limitation, and must be construed as such. Inasmuch as there is no saving clause in the statute in favor of insane widows, such widows are subject to its provisions, and no renunciation can be made by them or for them after the lapse of the time limit.

5 Law Notes, 145 (American Publication); 111 Wis. 501, Van Sleenwyck vs. Washburn; Carman case, page 533; 81 Md. 555, Garrison vs. Hill.

A careful study of the bill of complaint discloses that no act on the part of James L. Kernan in making the transfers and executing the instruments mentioned, was in violation of the law. It does aver that the whole proceeding whereby the preferred and common stock was issued to said James L. Kernan was in violation of the spirit and purpose of Section 35 of Article 23 of the Code. But this averment is a conclusion of the pleader which is not admitted on demurrer to be true.

The bill fails to specify in what respect the provision of the code was violated, and the deed conveying the property from Kernan to the company (Plaintiff's Exhibit No. 4) recites that all of the stock which formed the consideration for the deed 'has been issued to and the ceritficates therefor have been delivered to said party of the first part (Kernan) in accordance with a resolution of the stockholders of said corporation duly passed at a meeting of stockholders held in the City of Bal-

timore, in the State of Maryland, on the 15th day of April, 1911, in compliance with the provisions of Section 35 of Article 23 ·of the Code of Public General Laws of Maryland." The facts set forth in this recital are not denied in the bill.

While it is good pleading in equity to state the cause of the action in general terms, and a minute statement of the circumstances is unnecessary, this does not apply to cases in which fraud is made a basis of relief. In such cases the pleader must do more than make a general charge. He must state the facts which constitute the fraud, so that the person against whom the relief is sought may have full opportunity not only to deny or explain the facts charged, but to disprove them. 128 Md. 554, Fried vs. Burk; 125 Md. 179, Boyd vs. Shirk.

Now the charge in this bill is not that anything was illegally done, or that any concealment or deceit was practiced, but that when he made the transfers and executed his will, it was all done with intent to defraud his wife out of her legal share of his estate. But one averment is made of a fact that can be considered a badge of fraud. In making the transfers of stock he reserved a beneficial interest in himself for life. There was nothing improper in this; but some of the cases hold that fraud may be proved by a reservation in the deed of any interest in the property by the husband. See Rabbett vs. Gaither, 67 Md. 105.

This alleged badge of fraudulent intent is a reservation of a life estate in the stock, and it is claimed that this relates back so as to impress the fraud on the transfer of the real estate and invalidates that, although the grantor did not reserve any interest in or control over the real estate whatever.

I do not understand any case to go any farther than to state that such reservation is a circumstance to be considered with the other circumstances in the case, to prove the fraudulent intent of the husband. In all such cases, I think, it will be found that there were other facts which tended to prove such intent.

This reservation standing alone, being itself a perfectly legal and correct think for Kernan to do, and being unaccompanied by the averment of any other fact which might tend to prove a fraudulent intent on his part to deprive his wife of her right, taken in connection with the fact that he did by his will leave her so much of the income of $20,000 legacy as she might need, and the absence of any charge in the bill that the support and attention she receives in Mt. Hope are inadequate, or that the income from this legacy is insufficient for her needs, make out an insufficient allegation of fraudulent intent.

Inasmuch as the plaintiff had been adjudicated insane in an appropriate proceeding, and the property in question had been acquired by Kernan after such finding, he was authorized to convey it by deed without his wife's signature; Code, Art. 45, Sec. 13.

The deed from his to the Kernan Company bears date 20th April, 1911, and was recorded two days later. It recites as the consideration $5 and 5,997 shares of stock of the Kernan Company. The bill states that this was all of the corporate stock except three shares. So that this deed, perfectly legal without her signature, conveyed the property which the complainant wishes to impress with her dower, to the corporation for a valuable consideration. The fraudulent intent charged to Kernan is not imputed in the bill to the company, the grantee. Nor is it averred that Kernan was a director or officer of the company. His intent, if Kernan had any, can not therefore be imputed to the company. Thus it appears that the corporation is a bona fide holder of this property for value and without notice—at least there are no averments in the bill to the contrary.

If this were the bill of a creditor of Kernan seeking to vacate the deed to the company as fraudulent. it appears to be quite clear that the bill would be insufficient without charging the corporation with being party to the fraud, or with having notice of it, or without reciting facts insufficient to put the corporation upon inquiry.

93 Md. 642-3, Crooks vs. Brydon.

Can the widow be permitted to maintain a suit against the company to set aside this deed which on its face shows full and adequate consideration, claiming it to be in fraud of her rights, without making averments in her bill equally specific?

Counsel for the complainant insist that the Kernan Company is a one-man corporation, and that acting through it Kernan perpetrated the alleged fraud upon his wife. The one-man corporation principle is invoked usually in behalf of creditors, in cases where the person in control of the corporation by means of stockownership, is using the corporate equity as a cover for his dominion over the property of the company. Reservation of possession or dominion over the property conveyed after the transfer has been executed is usually an indication of fraudulent intent, but not in those cases where such possession or dominion is not inconsistent with the rights of the grantee.

53 Md. 363, Fuller vs. Brewster.

4 Mason 321-2, Phetteplace vs. Sayles.

144 U. S. 597-8, Crawford vs. Neal.

We must bear in mind this important distinction between an assignment which hinders or delays a creditor, and one which results in depriving a wife of her legal right in her husband's property. If the transfer is voluntary the deed itself is presumptive evidence of fraud against the creditor. It is not so against the wife, but the onus is imposed upon her of proving the fraudulent intent of her husband in making the transfer.

In the common stock he reserved a life estate in 447 shares, and he held one share absolutely. He parted with 550 shares absolutely to Frederick C. Schanberger and Shirley Carter.

He transferred all of the 5,000 shares of preferred stock to Frederick C. Schanberger and Shirley Carter, trustees, to hold the same and collect the dividends and income therefrom, and to pay the rents, dividends and income to himself for life. It thus appears that on April 20 and 22, 1911, he parted with title and control of a majority of the common stock and all of the preferred stock. It is not averred in the bill that thereafter Kernan withheld the certificates of stock so transferred, or that he thereafter exercised any dominion over said stock so transferred, or over the property of the corporation. It thus appears that on and after April 22, 1911, said Schanberger and Carter individually and as trustees were in control of said company, by virtue of their stockholdings. Under these circumstances it is difficult to see how the one-man corporation doctrine can apply in this case, without specific averments in the bill of acts of dominion over the property of stock of this company by Kernan after said transfers were made.

It should be remembered that Kernan by the transfer mentioned did not strip himself of his entire property for the inventory of his estate shows personalty valued at $101,568.

In Fligley's case, 7 Md. 561, the Court says, the wife's claim upon her husband to a certain extent stands in the same attitude as a creditor does towards his debtor under the Statute of Elizabeth. The Court then says: "There is this difference between the claim of the wife upon her husband's estate, and that of a creditor upon the estate of his debtor, in the latter case a debtor can not even by a bona fide gift of the whole, or a part of his property to a third party, impede his creditor in the collection of his debt. Not so as respects the gifts or voluntary transfers by a husband of his property in relation to the rights of his wife. If not made with the *actual intent* of defeating the rights of his wife, they will be sustained, although they leave her without the means of subsistance."

Judge Pearce closes an exhaustive opinion in Collin's case, 98 Md. 484, with this reservation:

"Nothing we have said is to be understood as going beyond the case before us, or as laying down the rule more broadly than to protect the wife against a voluntary conveyance by the husband of *all* his estate, made on the eve of marriage, without her knowledge, and with the intent of defeating her marital rights. We do not wish to be understood as carrying this doctrine to an extent which would impose any restraint upon the husband in the free and unlimited exercise of his right to alienate his property at will, provided he does so bona fide, and with no design of defrauding her of her just claims upon him and his estate. The fraudulent intent in all such cases being the true test of the validity of the transaction."

For the above reasons the bill of complaint is fatally defective, and the demurrer will be sustained.